LOTTINGER, Judge.
South Lafourche Crawfish Farm, Inc. brought this suit alleging that the defendants, Helena Chemical Company and Cajun Flying Service, Inc., killed all the vegetation in plaintiff’s commercial crawfish ponds causing an oxygen depletion which resulted in total pond failure. From a trial court judgment absolving the defendants of liability, the plaintiff perfected this appeal.
The issue on appeal is whether the plaintiff proved a causative connection between the chemical spraying activity and the pond failure. If causation is shown, we must decide whether the defendants owed a duty to warn the plaintiff that the dying vegetation would deprive the water of oxygen to such a magnitude that the ponds would fail.
FACTS
South Lafourche Crawfish Farm, Inc. began operating two commercial crawfish ponds in the southern part of Lafourche Parish in the early 1970’s. One pond covered 350 acres, the other 150 acres. The ponds were initially stocked with “seed” crawfish, which grew and reproduced to begin the harvesting cycle. The ponds were flooded with water from a nearby reservoir on a seasonal basis. The flooding generally occurred in early fall. Crawfish trapping began in the winter months and continued through the spring. The ponds were then drained and the crawfish burrowed into the ground to begin the cycle anew.
In early August, 1977, Raymond Melan-con, an official with South Lafourche Crawfish Farm, contacted Helena Chemical Company to obtain a herbicide to rid the two ponds of vegetation. Melancon claims he asked specifically for the chemical 2-4-D and told the Helena representative that he wanted only broad leaf vegetation killed. The vegetation had become a hindrance to fishermen trapping in the ponds and some of them had suggested spraying to relieve the problem. Helena recommended the use of a chemical called Weed Master — a combination of 2-4-D, Amine and Banvel mixed at V/2 quarts per five gallons of water per acre. Weed Master was a general purpose herbicide.
The spraying operation was arranged and Helena agreed to supply the chemical while Cajun Flying Service was to handle the aerial spraying.
The spraying operation occurred soon after the contact between Melancon and Helena. At the time of the spraying the ponds were dry and the crawfish were deep in their burrows awaiting the fall flood waters that would bring them to the surface. As a result of the spraying, all plants in the ponds were killed. “In other words,” Me-lancon testified, “it [the spray] did a good job. It killed everything.”
*1273 A few days after the spraying, a heavy rainfall occurred but the testimony is conflicting as to whether the rainfall flooded the ponds. About a month after the spraying, South Lafourche Crawfish Farm began flooding the ponds with water from its reservoir in anticipation of the 1977-78 season. It took 26 to 30 days to flood the ponds with 13 to 18 inches of water. However, when test runs were made for crawfish, they revealed that a total pond failure had occurred. No crawfish were caught during the 1977-78 season, as compared to 150,000 pounds in 1973-74, 100,000 pounds in 1974-75, 46,000 pounds in 1975-76, and 28,000 pounds in 1976-77.
The preponderance of the expert testimony introduced at trial points to oxygen depletion as the cause of the pond failure. The chemical itself was not the cause of the crawfish failure: the crawfish did not suffer from chemical poisoning. The oxygen depletion was caused by the decay of the vegetation killed by the chemical. The decaying process apparently robbed the water of oxygen to the detriment of the crawfish. Other possible causes for the pond failure were also mentioned, including excessive rainfall in late summer and early fall of 1977 and improper flushing of the ponds.
TRIAL COURT’S FINDING
In written reasons for judgment the trial court held:
“When all of the possibilities are analyzed, the simple truth is that no one was able to say with any degree of certainty what did cause the kill. But assuming that the excessive dead vegetation was responsible for the loss of oxygen in the pond and that this was the reason for the pond failure, can liability be assessed to the defendants? We think not. Plaintiff’s [sic] contracted with the defendant, Cajun Flying Service for the spraying of the pond area to accomplish the killing of the vegetation. Defendants complied with their contract and accomplished the purpose sought by the plaintiff. Defendant as a spray service was not the guarantor or insurer of the crawfish pond operation. Of the two parties to the contract, the plaintiff was the ‘expert’ in this field, and it made the decision when to spray and what to spray. As a matter of fact, the testimony revealed that this was the first crawfish pond that the defendants had been asked to spray, and certainly there was no evidence that they held themselves out as experts in that particular field of spraying nor that they contracted for anything more than to kill the vegetation in a given area, which they successfully accomplished. The court is merely commenting on this in an overall view of the case, but the primary ruling of the court is that plaintiff failed by lack of evidence to carry its burden of proof that defendants were indeed responsible for the failure of the ponds.”
SPECIFICATIONS OF ERROR
The plaintiff contends on appeal that the trial court erred in failing to find that the loss of the crawfish was directly related to the defendants’ joint negligence, and in failing to award damages to the plaintiff as a result of the loss.
BURDEN OF PROOF
The gravamen of the plaintiff’s allegation in this suit is that the chemical Weed Master was used instead of the chemical 2-4-D, which was purportedly requested by Mr. Melancon. Had 2-4-D been used, the plaintiff claims only broad leaf vegetation would have been killed and the oxygen depletion would not have occurred. To succeed in this litigation, plaintiff had to prove that its allegation was indeed true — that 2-4-D would not have caused the same result caused by Weed Master. However, plaintiff has failed to prove that the application of the herbicide Weed Master caused more oxygen depletion than would have been caused by the application of a broad leaf herbicide.
Additionally, we agree with the trial judge in his finding that other factors could have caused the destruction of the ponds.
*1274 Therefore, for the above and foregoing reasons, the decision of the trial court is affirmed at appellant’s costs.
AFFIRMED.